# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:05CV153-C

| | |
|---|---|
| **LENDINGTREE, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND ORDER** |
| ) | |
| **LOWERMYBILLS, INC., d/b/a** ) | |
| **LOWERMYBILLS.COM,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for Leave to Take a Rule 30(b)(6) Deposition of Third Party IMX, Inc." (document #72) filed October 23, 2006. The Plaintiff filed its "Brief in Opposition . . ." (document #73) on October 26, 2006. On October 27, 2006, the Defendant filed its "Reply . . ." (document #74).

Also before the Court is the Defendant's "Motion to Remove Confidentiality Designations from Certain Documents" (document #71) filed October 13, 2006. The Plaintiff filed its "Response . . ." (document #75) on October 30, 2006. On November 13, 2006, the Defendant filed its "Reply . . ." (document #77).

These matters have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the subject Motions are now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the Defendant's "Motion for Leave to Take a Rule 30(b)(6) Deposition . . .," and <u>grant in part</u> and <u>deny in part</u> the Defendant's "Motion to Remove Confidentiality Designations . . .," as discussed below.

# I. FACTUAL AND PROCEDURAL HISTORY

This is a patent infringement action seeking damages and equitable relief. The Plaintiff, LendingTree, Inc., a Delaware corporation headquartered in Charlotte, North Carolina, and the Defendant, LowerMyBills, Inc., a California corporation, are online mortgage brokers. The Plaintiff is the owner of a patent for a "Method and Computer Network for Coordinating a Loan Over the Internet" ("the patent"), and has accused the Defendant of willfully infringing and inducing its customers to infringe the patent.

On August 22, 2005, the undersigned entered a "Pretrial Order and Case Management Plan" setting, among other things, the deadline for fact discovery (which in intellectual property litigation is often differentiated from expert discovery) for May 15, 2006. In addition, and also relevant to the subject Motions, the undersigned entered a "Stipulated Protective Order" on October 3, 2005.

On February 17, 2006, and upon the filing of a "Consent Motion" by the parties, the fact discovery deadline was extended to July 14, 2006. On July 17, 2006, the parties filed another "Consent Motion" to extend to August 16, 2006 the deadline for the Defendant to take the depositions of six specific fact witnesses, and the Court granted the parties' Motion the same day. However, because the Plaintiff would not consent to an extension as to the Rule 30(b)(6) deposition of third party IMX,[1] on July 20, 2006, the Defendant filed a motion to take this deposition after the close of discovery. The Court granted this request, but required that the deposition be completed no later than September 25, 2006.[2]

---

[1] Although the record does not go into great detail as to the relationship between the parties and IMX, there is no dispute at this point in the proceedings that IMX possesses information relevant to this action.

[2] As the undersigned noted in the August 22, 2006 Order, given that IMX has consented to appear, extending this deadline essentially amounts to an extension of the fact discovery deadline.

Following the August 22, 2006 Order, the Defendant asserts that it was not able to set up a mutually agreeable date for the IMX deposition by the Court-imposed deadline. Specifically, one of the IMX deponents was allegedly out of the country for part of September, and IMX counsel was preparing for a trial at the end of September. Thus, according to the Defendant, "the earliest workable dates for the IMX deposition fell in October."

On September 19, 2006, the Defendant sent two emails to the Plaintiff proposing and explaining dates for the IMX deposition. The Plaintiff responded as follows by email on September 22, 2006:

> I had to go back and check, but it is my understanding that the Court ordered that any deposition of IMX be completed by September 25. Obviously, the third week in October is far outside the period allowed by the Court. Does LMB disagree with my reading of the Court's order?

On September 25, 2006, the Defendant sent the following electronic response:

> The Order does state that the IMX deposition be completed by October 25. However, as you are aware, IMX is a third party and this is the earliest time we could arrange a date convenient to it (in particular, its attorney has upcoming trial obligations and the employee who will be designated just returned from abroad).
>
> We believe that it is in the spirt of the Court's Order to conduct this deposition as soon as practicably possible. As stated in my prior email, that date would be the third week in October.

After no response to this e-mail, the Defendant followed up with an October 3, 2006 e-mail. And, after more silence from the Plaintiff, the Defendant sent a letter addressing several issues, including this one, on October 6, 2006. After no response to this issue again, on October 11, 2006, the Defendant noticed the IMX deposition to take place on October 27, 2006. That same day, the Plaintiff communicated that it would not agree to the deposition as "untimely," and that the Defendant would have to obtain leave from the Court to conduct the deposition. Thus, the

3

Defendant filed the instant Motion seeking leave to take the IMX deposition.

In the midst of this disagreement, and poor communication and cooperation by the Plaintiff, the parties were also arguing over whether certain documents were incorrectly designated "Confidential" and "Highly Confidential – Attorneys' Eyes Only" by the Plaintiff. On September 29, 2006, the Defendant communicated to the Plaintiff that it believed these designations should be removed from nineteen documents, which had been used as exhibits during depositions. The Plaintiff never responded to this request. On October 11, 2006, the Defendant left a voicemail message for the Plaintiff regarding this issue, and again there was no response. Thus, on October 13, 2006, the Defendant filed the instant Motion seeking removal of these designations.

The Defendant's Motions have been fully briefed and are, therefore, ripe for determination.

## II. DISCUSSION

### A. Motion for Leave to Take a Rule 30(b)(6) Deposition of Third Party IMX, Inc.

In this Motion, the Defendants seek an extension of fact discovery to conduct a Rule 30(b)(6) deposition of third party IMX, Inc. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441

U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

Further, it is well settled that whether to extend any pretrial deadline, including discovery deadlines, is within the discretion of the district court. See, e.g., Heyman v. M.L. Marketing Co., 116 F.3d 91, 96 (4th Cir. 1997) ("[d]istrict courts must be allowed sufficient ... authority to control their dockets); and Lone Star Steakhouse & Saloon, Inc., 43 F.3d at 929 ("district court [has] substantial discretion in managing discovery").

Applying these legal principles to the facts in this case, the undersigned concludes that the interests of justice are best served by allowing the Defendant to take the IMX deposition(s). The Plaintiff does raise the concern that allowing this deposition to go forward will require a re-opening of expert discovery. Should this be necessary, the parties should file a consent motion to extend these dates. Accordingly, the Defendant's Motion is granted.

### B. Motion to Remove Confidentiality Designations From Certain Documents

In this Motion, the Defendants seek to have the confidentiality designations removed from nineteen sets of documents which have been used as exhibits in depositions. The confidentiality designations at issue stem from the "Stipulated Protective Order," which provided:

> Each party shall have the right to designate as confidential and subject to this Protective Order any information produced by it in this action which contains, reflects, or otherwise discloses confidential technical, business or financial information ("CONFIDENTIAL" information). This designation shall be made by stamping or otherwise labeling each page or thing containing confidential information with the legend CONFIDENTIAL prior to its production or, if inadvertently produced without such legend, by furnishing written notice to the receiving party that the information shall be considered confidential under this

Protective Order. To the extent that material is marked CONFIDENTIAL, such material shall be revealed to or used by limited categories of individuals, as provided for in ¶ 4.1, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed CONFIDENTIAL and the same terms regarding confidentiality of these materials shall apply as apply to the originals. The parties shall use reasonable care to avoid designating any documents or information CONFIDENTIAL that are generally available to the public.
. . .

Each party shall have the right to designate as highly confidential and subject to this Protective Order any information produced in this action which contains, reflects, or otherwise discloses trade secrets, current research and development information or competitively sensitive commercial or financial information ("HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information). To the extent that material is marked HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, such material shall be revealed to or used by limited categories of individuals, as provided for in ¶ 4.2, and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries of information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY, and the same terms regarding confidentiality of these materials shall apply as apply to the originals. The parties shall use reasonable care to avoid designating any documents or information HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY for which the designating party does not have a good faith belief that the documents or information satisfy the criteria set forth in this paragraph.
. . .

This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an Order permitting the disclosure or use of information or documents otherwise prohibited by this Protective Order, or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

On any challenge to the designation of any information, the burden of proof shall lie

with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information. If a party seeks declassification or removal of particular items from a designation on the ground that such designation is not necessary to protect the interests of the party wishing the designated information, the following procedure shall be utilized:

> (a) The party seeking such declassification or removal shall give counsel of record for the other party written notice thereof by facsimile, with confirmation by mail or by personal delivery, specifying the designated information as to which such removal is sought and the reasons for the request; and
>
> (b) If, after conferring, the parties cannot reach agreement concerning the matter within seven (7) business days after the delivery and receipt of the notice, then the party requesting the declassification or removal of particular items may challenge the designation by motion or at a regularly scheduled discovery conference.

Pursuant to the terms of the Protective Order, on September 29, 2006, the Defendant sent a letter to the Plaintiff requesting that the nineteen categories of documents be "declassified" because "none of these particular documents post-date 1999." The Defendant then followed up this request with a voicemail message on October 11, 2006. The Plaintiff did not respond to the letter or the voicemail, and the Defendant brought the instant Motion. (Pursuant to the terms of the Protective Order a party may challenge the designation by motion if the parties have not reached an agreement within seven business days.)

The Plaintiff is only contesting the request as to twelve of the nineteen categories of documents, initially arguing that the Defendant's request should be denied because it failed to follow the procedure for challenging such designations as set out in the Protective Order. Specifically, the Plaintiff argues that the Defendant's September 29 letter did not give "the reasons for the request." This argument is particularly unpersuasive in light of the fact that counsel for the Plaintiff seemed

7

to think this excused him from discussing the Defendant's Motion with counsel for the Defendant. (The current disputes could have possibly been resolved by counsel for the parties had counsel for the Plaintiff not taken what appears to be an untenable legal position.)

Moving to the substance of this Motion, the undersigned has reviewed the documents still at issue and will rule on the designation of each one individually. As the Protective Order requires, "[o]n any challenge to the designation of any information, the burden of proof shall lie with the producing party to establish that the information is, in fact, CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information." Thus, the Plaintiff bears the burden to prove that these documents were properly designated as confidential.[3]

### 1. "May 21, 1997 Business Plan"

This set of documents comprises a business plan of CreditSource USA (now known as the Plaintiff LendingTree). The business plan includes "long-term planning initiatives that are currently viable, that have not previously been disclosed to the public, and that are protected as confidential by LendingTree." It also contains "system technical information that has not [been] previously released to the public."

After reviewing the document, the undersigned agrees with the Plaintiff that this business plan contains commercially sensitive information. However, it is apparent from the Defendant's briefings and attachments that the bulk of the information contained in the business plan has been publicly disclosed in another trial. Thus, any confidentiality concerns the Plaintiff may have

---

[3] According to the Plaintiff, all of the documents at issue were designated "HIGHLY CONFIDENTIAL" except for the third set of documents, "Letter from D. Lebda to R. Wilson," which was designated "CONFIDENTIAL." The Defendant alleges that the letter was also labeled "HIGHLY CONFIDENTIAL," but the Court will defer to the Plaintiff on how its documents should be classified.

legitimately had have been lost because this document has already been made public. There are minor differences between the March and May 1997 business plans, but it is not these minor differences which qualify the document for status as "HIGHLY CONFIDENTIAL." Rather, it is the overall business plan – which is just as easily understood from the March document as the May document. Further, although not relevant to the confidentiality determination, it is also apparent that the May document does contain information which is relevant to this action but not present in the March document. Accordingly, the undersigned finds that the Plaintiff's expectation of privacy in this document has already been waived, and therefore, that the "HIGHLY CONFIDENTIAL" designation should be <u>removed</u>.

## 2. "<u>Emails from T. Lebda to Michael Allen and January 29, 1998 system walkthrough document and other emails</u>"

The Plaintiff opposes declassifying these documents because they contain "personal identifying information of LendingTree customers, including driver's license numbers, banking information, and social security numbers." The Plaintiff's request to keep the personal identifying information of its customers confidential is entirely reasonable. As such, the undersigned will require the Defendant to redact <u>all</u> such personal identifying information from these documents. However, after the required redaction, the undersigned concludes that the documents will no longer need to be classified as "HIGHLY CONFIDENTIAL."

## 3. "<u>Letter from D. Lebda to R. Wilson</u>"

This letter is between two LendingTree executives and "describes interactions between LendingTree and one of its vendors." After a review of this letter, it is apparent that the importance of its contents have been exaggerated by the Plaintiff. This is the one document of the twelve which

9

was designated "CONFIDENTIAL" instead of "HIGHLY CONFIDENTIAL," and it does not appear to even require the lesser protection of the "CONFIDENTIAL" status. Accordingly, the undersigned concludes that this document should lose its confidentiality designation as well.

### 4. "Consulting Agreement between R. Wilson and LendingTree"

This document is an unexecuted consulting agreement which the Plaintiff fears would "reveal a negotiating position of LendingTree that may be used in the future against [it] in similar negotiations." For this document, the Plaintiff has carried its burden of proof that it has a reasonable expectation of confidentiality. The fact that a former employee was in possession of the document does not satisfy the undersigned that the Plaintiff has in any way made this document "public" in any meaningful sense of that term. Further, it is reasonable that the Plaintiff would seek to keep such information confidential. Accordingly, the undersigned will not remove the protected designation as to this document.

### 5. "Service Agreement between Maverick and LendingTree"

This service agreement "contains system technical information that has not [been] previously released to the public." In regards to this set of documents, the undersigned concludes that these are also properly labeled as "HIGHLY CONFIDENTIAL." The documents do contain system technical information and fit the description of what is highly confidential under the Protective Order.[4]

### 6. "CD including screen shots of CreditSource USA website"

These documents show screen shots from the Plaintiff's website. However, not all of these

---

[4] However, the undersigned does not rule out the possibility that the Defendant may be entitled to utilize portions of this document without the classification of "HIGHLY CONFIDENTIAL." The Defendant has not made such a request, but should the need arise the parties are encouraged to cooperate and reach a reasonable solution without Court intervention.

screens were able to be accessed by the general public – some were available only to "lenders with whom LendingTree contracted for lending services only," and contain system technical information. Although the undersigned does not doubt that some of these screens were available to lenders only, a review of the screens does not reveal any system technical information with a reasonable expectation of confidentiality. Accordingly, the "HIGHLY CONFIDENTIAL" designation will be removed from this document.

### 7. "CreditSource USA CD-ROM presentation outline"

This presentation outline "contains system technical information that has not previously [been] released to the public." The Plaintiff has not carried its burden of proof as to this outline. The only information provided by the Plaintiff is that the outline contains technical information which has not been released to the public. From a reading of the outline, there does not appear to be any competitive information which would not be readily available to the public – perhaps not in this concise outline form, but it is not the form of the document which protects it, it is the content. Accordingly, the undersigned will allow the designation of "HIGHLY CONFIDENTIAL" to be removed from this document.

### 8. "August 1998 Business Plan"

The Plaintiff seeks to protect this business plan because it "includes long-term planning initiatives that are currently viable" and have not been previously released to the public. The business plan also "contains system technical information" that has not been released to the public. From reviewing the document, it does appear to contain sensitive information. Although the Plaintiff argues that any expectation of confidentiality is not legitimate because the document was intended for third party investors, there is an obvious difference between disclosing a document to

the public and to a limited class of investors. Accordingly, the undersigned will not order removal of the confidentiality designation for this document.[5]

### 9. "Emails from T. Lebda to customer"

The emails protected here contain "personal identifying information of the customer," and LendingTree "maintains this information as confidential." As previously discussed, protecting personal customer information is a reasonable concern. Thus, the confidentiality label will be removed from these documents, but only upon the condition that personal identifying information of customers be redacted.

### 10. "CreditSource Operations Summary, March 1997"

This operations summary "includes metrics that LendingTree currently assesses," and "provides data [that] could be used by a start-up competitor to focus its business." After reviewing this document, the undersigned agrees that it contains sensitive information and is properly designated as confidential.[6]

### 11. "Shawmut Presentation, March 12, 1997"

This presentation was a confidential one made to investors which "outlines key components of LendingTree's start-up strategy, including metrics and allocations of funds." The Plaintiff is concerned that this "information would aid a start-up competitor in more-quickly reaching the market." After reviewing this document, it is decidedly lacking in the substance described by the

---

[5] As previously noted, the Defendant may seek to use part of this document without the confidentiality designation and the parties are strongly encouraged to resolve this possibility among themselves. In addition, this ruling does not preclude the Defendant from using this document in this action – it only requires it to operate within certain limitations.

[6] The Defendant refers to the fact that some of the information in this document is also contained in a public SEC filing. Of course, if it is this non-sensitive information which the Defendant seeks to use in its case it would appear to be free to use the SEC documents to prove their contents.

Plaintiff. It is more of an outline of a start-up strategy, but the details were obviously in the oral presentation. Accordingly, the undersigned concludes that the confidentiality designation will be removed from this document.

## 12. "December 1997 Business Plan"

This business plan contains "long-term planning initiatives that are currently viable" and "system technical information" – none of which has been previously released to the public. For the reasons noted in approving protection of the August 1998 Business Plan, the undersigned finds that this document is properly labeled "HIGHLY CONFIDENTIAL" and will, therefore, not remove this designation.

## III. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The Defendant's "Motion for Leave to Take a Rule 30(b)(6) Deposition of Third Party IMX. Inc." (document #72) is **GRANTED**, that is, the Defendant is **GRANTED LEAVE** to conduct the previously-noticed deposition of IMX, Inc., at a date, time and location mutually convenient to the parties and IMX, Inc., but no later than December 31, 2006.

2. The Defendant's "Motion to Remove Confidentiality Designations from Certain Documents" (document #71) is **GRANTED** in part and **DENIED** in part, as discussed above.

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO ORDERED.**

Signed: November 20, 2006

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge